# Add-Index Corporation v. Griffith & Dixon.

(Decided May 29, 1928.)

## Appeal from Johnson Circuit Court.

1. Sales.—Where contract was entered for purchase of combination register, and subsequently second contract was entered for purchase of account register which provided second order should cancel first, main purpose of clause being to show that purchasers were not buying two machines and second machine was substitute for first, held that if they did not accept second machine and become bound to pay for it, contract for its purchase did not become final and first contract stood just as it was before second was made, for effect cannot be given to one clause of contract and not to other clause.

2. Sales.—In action on note given as payment for combination register, where second contract had been executed for account register which provided that it canceled first contract, but second machine had been returned and purchasers had never returned nor offered to return first machine, but kept it in store and continued to use it until one sold out to the other, who took machine to another state and put it in store he was running there, held that it could not be returned two years later, since where machinery such as this is ordered purchaser if he wants relief from contract must act promptly.

3. Sales.—Where contract was entered for purchase of combination register and subsequently second contract was entered for purchase of account register which provided second order should cancel first, main purpose of clause being to show that purchasers were not buying two machines and second machine was substitute for first, evidence held to warrant giving of peremptory instruction in seller's action on buyer's note given in payment for first machine.

WHEELER & WHEELER for appellant.

BLAIR & HARRINGTON for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Reversing.

On April 27, 1925, Griffith & Dixon signed an order to the Add-Index Corporation for an adding machine, cash register, and account register combined and agreed to pay therefor $400, of which $25 cash was sent with the order, and in the order they agreed to execute notes for the remainder upon the arrival of the property, payable $25 a month until the remainder was paid. The order was approved by the company. The property was re-

ceived by the purchasers, and on March 16, 1925, they wrote the corporation that the machine purchased by them was on that day installed and its operation thoroughly and satisfactorily explained. They then executed a note as agreed in the order, and in this letter stated the subsequent monthly payments would be made as agreed. The note was inclosed in the letter. The agent says that after this they took a notion they would exchange the machine they had for a 300 account register, which was a larger cabinet and did not contain a cash register. They say that the machine did not function properly and the agent agreed for this reason to make the exchange. On April 27, 1925, they signed an order to the corporation to ship to them the 300 account register, and agreed to pay therefor $400. This order is the same as the one they had previously given except the description of the machine and these words which were added: "This contract cancels the contract signed in February, 1925, for one model 891 C 2 combination register." At the end of the paper and following the signatures of the purchasers were these words: "Subject to approval." The machinery came. It was placed in position and they began to use it. They then paid $40 more and executed a note for $335, payable in monthly installments as before. The agent testifies that when this was done they asked him to leave both the machines there and allow them to see which machine they liked best. They testify that the first machine was then turned over to the agent and he asked them to hold it for a while. Some four months later they shipped back to the company the second machine; the first machine was never returned. It was there in the store until Dixon sold out to Griffith. Griffith took it over to Ohio, where he was running a store, and kept it there until he sold that store and moved to Ashland, and it was there in his possession at the time of the trial in 1927. It had never been tendered in any way to the company. The company brought this suit to recover on the note, setting up in its petition and amended petition both orders and the execution of both notes and praying judgment for the balance due on the note. The defendants pleaded in substance that when the first machine was received it was not as represented and was not satisfactory to them; they then ordered the second machine as a substitute for it and to be approved by them when received if satisfactory; that it was not satisfactory and was returned by them to the

corporation.   They prayed judgment for the $65 which they had paid as a counterclaim.   On the trial the defendants testified that the words following their signature at the foot of the order, "subject to approval," were put there to mean subject to the approval of Griffith & Dixon, and that this was the agreement.   The agent says that they wanted a larger machine and that to accommodate them he agreed to substitute the second machine for the first; that he left both the machines at their request so that they could return the one they did not wish to keep; and that he never had any notice of any kind after this. On the trial the defendants relied on the provision in the second order that it abrogate the first order, and insisted that the first order was rescinded by the second order and that when they did not keep the second machine they were entitled to have their $65 repaid to them.   The jury found a verdict for the defendants in the sum of $40. The plaintiff appeals.

The clause in the second order providing that "this contract cancels the contract signed in February, 1925, for 1 model 891 C 2, combination register," is simply a part of that contract, and if the contract never became final this clause, like the other clauses in the contract, did not become final.   The plain purpose of the clause was to show that the purchasers were not buying two machines and that the second machine was simply a substitute for the first.   If they did not accept the second machine and become bound to pay for it and the contract for its purchase did not become final, then the first contract stood just as it was before the second order was made, for effect cannot be given to one clause of a contract and not to other clauses in the same writing.   If the parties are not bound by the contract they are not bound by any part of it.

It is undisputed that the purchasers never returned or offered to return the first machine to the company. They kept it in their store and to some extent continued to use it until Dixon sold out to Griffith.   Griffith after this sold out and took the machine over to Ohio and put it in a store he was running there.   When he sold out there he took it with his other property to Ashland and had it there at the time of the trial.   It was then too late to offer to return it to the company.   He had kept the property for something like two years.

The rule is well settled that where machinery such as this is ordered in this way, the purchaser if he wants relief from his contract must act promptly and tender the property to the company from whom he bought it. Griffith not only kept this property, but took it out of the state and at no time tendered it to the company. Under the evidence the circuit court should have instructed the jury peremptorily to find for the plaintiff. Church v. Wright Machine Co., 190 Ky. 561, 227 S. W. 1003; Leming v. Howell, 198 Ky. 81, 248 S. W. 253; J. I. Case Threshing Co. v. Dulworth, 216 Ky. 639, 287 S. W. 994.

Judgment reversed, and cause remanded for further proceedings consistent herewith.